**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ROBERT J. GARCIA, JR.,

        Plaintiff,

v.                                    CIV 16-0982 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

        Defendant.

# <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum (*Doc. 22*) filed on February 9, 2017. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 3, 7, 10.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is well-taken and will be granted in part.

## I.    Procedural History

On January 14, 2013, Mr. Robert J. Garcia, Jr. (Plaintiff) filed an application with the Social Security Administration for Disability Insurance Benefits under Title II of the Social Security Act. Administrative Record[1] (AR) at 12, 76. Plaintiff alleged a disability

---

[1] Document 19-1 contains the sealed Administrative Record. *See Doc. 19-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

onset date of November 15, 2012. AR at 12, 76. Disability Determination Services determined that Plaintiff was not disabled both initially (AR at 100-03) and on reconsideration (AR at 109-13). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of his application. AR at 107-08.

Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 32-74. ALJ Eric Weiss issued an unfavorable decision on April 3, 2015. AR at 9-31. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 7-8), which the council denied on July 18, 2016 (AR at 1-6). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.    Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the

assessment of the claimant's residual functional capacity (RFC), he is unable to perform his past relevant work. 20 C.F.R § 404.1520(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); *see also* 20 C.F.R. §404.1545(a)(1). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient . . . RFC to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process, ALJ Weiss found that while Plaintiff "worked after the alleged disability onset date[,] . . . this work activity did not rise to the level of substantial gainful activity." AR at 14. The ALJ found, therefore, that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, November 15, 2012. AR at 14 (citing 20 C.F.R. §§ 404.1571–1576). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: major depressive disorder, post-traumatic stress disorder ('PTSD'), organic brain syndrome disorder, antisocial personality disorder, and generalized anxiety disorder . . . ." AR at 14 (citing 20 C.F.R. § 404.1520(c)). The ALJ found that the following impairments are non-severe: plantar fasciitis, obesity, mild degenerative changes in his cervical spine (neck pain), abdominal pain, sleep apnea, headaches, muscle weakness, vascular disease, and alcohol and substance abuse addiction. AR at 14-17.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 17 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). With respect to Plaintiff's mental impairments, the ALJ further found that Plaintiff has mild limitations in the first functional area (activities of daily living), and moderate limitations in both the second functional area (social functioning) and the third functional area (concentration, persistence or pace). AR at 17-18. The ALJ found that Plaintiff has experienced no episodes of decompensation of extended duration. AR at 18. Because Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation," the ALJ found that the paragraph B criteria are not satisfied. AR at 18; *see also* 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.06(B). The ALJ also found that the evidence of record "fails to establish the presence of the 'paragraph C' criteria of 12.02[,] 12.04" or 12.06. AR at 18.

At Step Four, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." AR at 20. The ALJ considered the evidence of record and Plaintiff's administrative hearing testimony, as well as the opinions of Plaintiff's treating physician and treating counselor, the consultative physicians, and Plaintiff's girlfriend. AR at 19-25. Ultimately, the ALJ found that Plaintiff "has the residual functional capacity to perform medium work as defined in 20 [C.F.R. §] 404.1567(c) . . . ." AR at 19. Specifically, the ALJ found Plaintiff "can lift 50 pounds occasionally and lift or carry 25

pounds frequently, and push and pull the same; and may stand or walk for six hours in an eight hour day and sit for two hours, with normal breaks." AR at 19. The ALJ found, however, that "due to a combination of mental impairments, [Plaintiff] is limited to performing simple, routine tasks; and may have occasional interaction with coworkers, supervisors, and the public." AR at 19.

ALJ Weiss concluded that Plaintiff is unable to perform his past relevant work as a heating and air conditioning installer (skilled medium work) and a janitor (semi-skilled medium work), because Plaintiff's RFC limits him to unskilled medium work. AR at 25-26. At the hearing, the ALJ asked the VE to assume an individual with Plaintiff's limitations who is "limited to performing simple, routine tasks, and may have occasional interaction with coworkers, supervisors, and the public."[2] AR at 63. The ALJ advised the VE to consider "any of the reasoning levels that satisfy unskilled work[,]" specifically including "detailed, but uninvolved instructions" and "several concrete variables." AR at 63-64. The VE testified that Plaintiff could perform three jobs at the light, unskilled level: cleaner and polisher, mail clerk, and photocopying machine operator. AR at 65-66.

The ALJ ultimately determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, [since] November 15, 2012 . . . ." AR at 27 (citing 20 C.F.R. § 404.1520(g)).

### III.    Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

---

[2] The ALJ asked the VE about other hypotheticals that are not relevant to this decision. *See* AR at 67-72.

2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV. Discussion

Plaintiff asserts three broad issues in his Motion. First, Plaintiff argues that the ALJ made errors in making the RFC finding, which ultimately rendered the ALJ's conclusion about Plaintiff's ability to work contrary to law. *Doc. 22* at 3. Second, Plaintiff contends that the ALJ erred in failing to develop the record. *Id.* Third, Plaintiff alleges

that "[t]he ALJ committed legal error by relying on VE testimony that was inconsistent with the Dictionary of Occupational Titles [DOT], without obtaining an explanation for the inconsistency." *Id.*

### A. The Court will remand for further proceedings on the ALJ's findings regarding Plaintiff's non-exertional limitations.

Plaintiff contends the ALJ failed to (1) fully consider his functional limitations (mental and physical) in making the RFC finding; and (2) apply correct legal standards to the opinions of treating psychiatrist Teresa O'Brien, M.D., treating counselor Patricia Parish, and Agency consulting psychologist Louis Wynne, Ph.D. *Doc. 22* at 3. Plaintiff argues that the erroneous RFC finding then "tainted the VE testimony at step five, which rendered the ALJ's conclusion that Mr. Garcia can work contrary to law." *Id.* The Court begins by examining the ALJ's analysis of Plaintiff's providers.

### 1. Treating psychiatrist Teresa O'Brien, M.D.

Plaintiff first argues that the ALJ improperly considered the opinion of Plaintiff's treating psychiatrist, Dr. Teresa O'Brien. *Id.* at 10-13. Plaintiff presents two main points of contention: first, it was error for the ALJ to give Dr. O'Brien's opinion "partial weight," and for the ALJ render his own psychiatric conclusion; second, the ALJ gave insufficient reasons to reject Dr. O'Brien's opinion. *Id.*

### a. ALJs must follow a two-step inquiry when evaluating a treating physician's opinion.

An ALJ must consider all medical opinions found in the record.[3] *Padilla v. Colvin*, No. CV 14-495 CG, 2015 WL 10383109, at *4 (D.N.M. June 29, 2015) (citing 20 C.F.R.

---

[3] Pursuant to the Revisions to Rules Regarding the Evaluation of Medical Evidence published on January 18, 2017, the Agency revised its medical evidence rules. *See* 82 Fed. Reg. 5844-01

§§ 404.1527(b), 416.927(b)). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about" a plaintiff's impairments. 20 C.F.R. § 404.1527(a)(2). An opinion from a treating physician is generally entitled to more weight than either an examining or an agency physician. *Padilla*, 2015 WL 10383109, at *4 (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (internal citations omitted)).

"The ALJ should accord opinions of treating physicians controlling weight when those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the 'treating physician rule.'" *Id.* (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (internal citations omitted)). "A treating physician's opinion is accorded controlling weight because the treating physician has a 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.'" *Id.* (quoting *Doyal*, 331 F.3d at 762 (internal quotation omitted, alteration in original)).

Where the "treating physician's opinion is not supported by medical evidence or consistent with the record," *id.* (citation omitted), it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§§] 404.1527 and 416.927.'" *Robinson*, 366 F.3d at 1082 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Soc. Sec. Ruling, SSR 96-2p, Policy Interpretation Ruling Titles II &

(Jan. 18, 2017). Because the changes were not in effect at the time of ALJ Weiss's decision, the Court will apply the 2016 version of the relevant regulations.

XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188,

at *4 (July 2, 1996))). The factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* (quoting *Watkins*, 350 F.3d at 1300 (internal quotations omitted)). "When evaluating

any medical opinion in the record, the ALJ must give good reasons – reasons that are

'sufficiently specific to make clear to any subsequent reviewers' – for the weight that he

ultimately assigns" to those opinions. *Padilla*, 2015 WL 10383109, at *4 (quoting

*Langley*, 373 F.3d at 1119 (internal quotations omitted)). The ALJ's "determination, like

all of his findings, must be supported by substantial evidence." *Id.*

### b.    The ALJ's finding is supported by substantial evidence.

Dr. O'Brien, a licensed medical doctor, is an acceptable medical source under

the regulations. 20 C.F.R. § 404.1527(a)(2). "As explained above, the ALJ must follow

two steps if he wishes to accord a treating physician's opinion less than 'controlling

weight.'" *Padilla*, 2015 WL 10383109, at *5. "First, the ALJ must find the opinion to be

unsupported by medical evidence or inconsistent with substantial evidence in the

record." *Id.* If it is not well-supported by the medical evidence or if it is "inconsistent with

other substantial evidence in the record[,]" the ALJ will not give the opinion controlling

weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins*, 350

F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2); 20 C.F.R. §

404.1527(d)(2), 416.927(d)(2)).

At the first step, ALJ Weiss concluded that Dr. O'Brien's opinion "is not a

comprehensive or detailed assessment of function . . . ." AR at 24. The ALJ noted that

"[w]hile the record supports that the claimant has anger problems and some difficulty

interacting with others, I find that it would not severely interfere with his ability to interact

with others." AR at 24. He further found that Dr. O'Brien's opinion was entitled to partial

weight because Plaintiff's "activities of daily living include the ability to go to school and

work[,]" and "the October 2015 treatment record reflects possible malingering." AR at

24. While ALJ Weiss's opinion does not provide a model for the first step of the inquiry,

he did specifically find that Dr. O'Brien's opinion was inconsistent with other substantial

evidence in the record.

At the second step of the analysis of a treating physician's opinion, the ALJ "must

determine what deference he will accord the opinion after considering the six deference

factors listed above, and state sufficiently specific reasons for that determination."

*Padilla*, 2015 WL 10383109, at *5; *see also* 20 C.F.R. § 404.1527. Plaintiff argues that

the ALJ's decision was contrary to the record, that he relied on insufficient reasons to

reject Dr. O'Brien's opinion, and that he did not specify what evidence contradicted Dr.

O'Brien's opinion. *Doc. 22* at 11-13.

The Tenth Circuit has "held that it is not necessary for the ALJ to address each

factor expressly or at length" at the second step of the inquiry, provided that the ALJ

offers "'good reasons in his decision for the weight he gave to the'" medical opinion.

*Mounts v. Astrue*, 479 F. App'x 860, 866-67 (10th Cir. 2012) (quoting *Oldham v. Astrue*,

509 F.3d 1254, 1258 (10th Cir. 2007) (internal citation omitted)). "What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[ ] the weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Id.* (quoting *Oldham*, 509 F.3d at 1258 (internal quotation omitted)). Here, ALJ Weiss did not address the six deference factors expressly, thus the Court will examine his treatment of Dr. O'Brien's opinion in light of the six deference factors.

Related to the first and second factors, the ALJ neither noted the length of the treatment relationship, nor commented on the nature and extent of the treatment relationship. AR at 24; *see also* 20 C.F.R. § 404.1527(c)(2)(i) ("Length of the treatment relationship and the frequency of examination"); 20 C.F.R. § 404.1527(c)(2)(ii) ("Nature and extent of the treatment relationship"). It appears from the record that Dr. O'Brien oversaw Plaintiff's medication management from approximately August 1, 2013, through September 15, 2014, a period of a little more than one year. *See* AR at 342. As Plaintiff notes, Dr. O'Brien likely had access to all of Plaintiff's therapeutic records from the Rio Grande Counseling and Guidance Services. *See Doc. 22* at 13. There are three Progress Reports reflecting individual visits between Plaintiff and Dr. O'Brien from April 8, 2014, April 29, 2014, and September 4, 2014. AR at 462, 472, 476. Dr. O'Brien wrote a letter concerning Plaintiff on January 19, 2015, in which she offered her opinion on Plaintiff's "multiple mental health issues" that "severely interfere with his ability to have successful interactions with people at work, at home, or in general in public." AR at 508. She also commented on Plaintiff's "probable traumatic head injury . . . which could contribute to his inability to control his anger, and may have resulted in some of his multiple incarcerations." AR at 508. Dr. O'Brien noted that some of Plaintiff's "disorders

are very difficult to manage with medications, and require consistent long term therapy."

AR at 508.

It appears the ALJ implicitly considered the third and fourth deference factors. The ALJ found that Dr. O'Brien's opinion was "not a comprehensive or detailed assessment of function," and he discussed other evidence that detracted from Dr. O'Brien's opinion. AR at 24; *see also* 20 C.F.R. § 404.1527(c)(3) ("Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion."); 20 C.F.R. § 404.1527(c)(4) ("Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion."). The Court notes that while there is some support for Dr. O'Brien's opinion in both her own treatment notes (*see, e.g.*, AR at 462 (noting that Plaintiff "works alone because of issue [with a]uthority")), and in the records from Rio Grande Counseling and Guidance, there is also substantial evidence in the record to support the ALJ's findings. The ALJ's discussion of the evidence in the section immediately preceding his treatment of Dr. O'Brien's opinion lends credence to his finding that Dr. O'Brien's opinion is inconsistent with the record evidence. For example, ALJ Weiss noted that Plaintiff often talked to his counselors about school and work: he began trade school in 2013, where he earned good grades and worked with at least one other student on homework (*see* AR at 20, 21 (*see also* AR at 422, 433, 491)); he was working off referrals from craigslist, obtained a business license in July 2013, started his own company, obtained an Associate's degree, was frustrated with work in July 2014, and "was operating an unlicensed HVAC

business, but got caught working without proper licenses so he had to stop." (AR at 21, 23; *see also* AR at 57-60, 404, 410, 466, 497).

The ALJ also discounted Dr. O'Brien's opinion because of record evidence from Dr. Pray, who suspected malingering. *See* AR at 22, 24. Plaintiff argues it was error for the ALJ to rely on Dr. Pray's conclusion, as there was also evidence that Plaintiff was committed to treatment and had made progress. *Doc. 22* at 12. The ALJ's conclusion was merited, however, where the record evidence also reflects notes from Plaintiff's treating counselor on January 12, 2013, that Plaintiff was "toying [with the] idea that he could get disability [with] a PTSD" diagnosis. AR at 430.

Plaintiff also argues it was error for the ALJ to discount Dr. O'Brien's opinion as not a comprehensive assessment. *Doc. 22* at 11-12. As the Commissioner points out, however, this was simply part of the ALJ's consideration of how Dr. O'Brien supported her opinion under 20 C.F.R. § 404.1527(c)(3). *Doc. 25* at 16 (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1289 (10th Cir. 2012) (holding that "ALJ properly gave no weight to [a] conclusory form, which lacked any functional findings")). Finally, Plaintiff argues it was error for the ALJ to "render[] his own psychiatric conclusion" in opposition to Dr. O'Brien's opinion regarding Plaintiff's "ability to have successful interactions with people[,]" finding instead that his anger issues "would not severely interfere with his ability to interact with others." *Doc. 22* at 10, 11; *see also* AR at 24. It is true that "an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Langley*, 373 F.3d at 1121 (quotations and emphasis omitted). The Court finds that the ALJ did

not reject Dr. O'Brien's opinion only on the basis of his lay opinion, nor did he "render his own psychiatric conclusion"; instead, he examined the record and substantial evidence supports his finding that Plaintiff has demonstrated the ability to function at work and school.

Ultimately, the Court finds that while ALJ Weiss's treatment of Dr. O'Brien's opinion was less than ideal, the ALJ gave adequate reasons for his decision to give the opinion partial weight, and substantial evidence in the record supports the ALJ's findings. *See Lax*, 489 F.3d at 1084 (citation omitted).

### 2. Treating Counselor Patricia Parish, LPCC

Plaintiff alleges that the ALJ failed to properly consider the opinion of treating counselor Patricia Parish, who opined that Plaintiff has "an inability to interact well with others; his chemistry is very difficult to stabilize (and has been so for years)"; and he is currently "unable to work due to his mental and physical health issues." *Doc. 22* at 13; AR at 509. Although Ms. Parish is a "treating source," she is not an "acceptable medical source" and, therefore, her opinion is not entitled to controlling weight. *See* Soc. Sec. Ruling, SSR 06-03p, Titles II and XVI: II and XVI: Considering Opinions and Other Evidence from Sources who are not 'Acceptable Medical Sources' in Disability Claims, 2006 WL 2329939, at *2 (Aug. 9, 2006).

The ALJ gave Ms. Parish's opinion "very little weight, as the evidence reflects that the claimant was working and going to school during this time period." AR at 25. He further noted that Ms. Parish did "not give a detailed function by function assessment." AR at 25. Again, this is an observation related to the ALJ's consideration of "the degree to which [Ms. Parish] present[ed] relevant evidence to support [her] opinion." *See* SSR

06-03p, 2006 WL 2329939, at *4-5 ("Evidence From 'Other Sources'"). The Court notes that Ms. Parish, who apparently met with Plaintiff three times (AR at 458, 459, 464), recorded that Plaintiff's "mood [is] improving [with] meds" and that he "[h]as his own business." AR at 464. The record also shows that Plaintiff worked and went to school during the first three quarters of 2014, which overlapped with the period of time he saw Ms. Parish. *See* AR at 57, 464. While the ALJ's treatment of Ms. Parish's opinion is scant, the Court finds support for his conclusion that her opinion is inconsistent with the record and her own treatment notes, and substantial evidence in the record supports the ALJ's findings.

### 3.    Consultative Psychologist Louis Wynne, Ph.D.

Plaintiff asserts that the ALJ erred in evaluating the opinion of agency consultative psychologist Louis Wynne, Ph.D. *Doc. 22* at 14-17. Specifically, Plaintiff contends that the ALJ failed to discuss what weight he gave to Dr. Wynne's opinion, "the RFC reflects that he gave it none[,]" and the reasons the ALJ gave to discount Dr. Wynne's opinion are insufficient. AR at 16. The Commissioner responds that the ALJ reasonably gave Dr. Wynne's opinion only "partial weight," because it was inconsistent with the record evidence. *Doc. 25* at 19.

Because the ALJ did not give Dr. O'Brien's opinion controlling weight, he was required to explain what weight he gave to Dr. Wynne's opinion. *See* 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.").

With respect to the first and second factors, the ALJ noted that Plaintiff attended a consultative examination with Dr. Wynne in August 2013. AR at 23; *see also* 20 C.F.R. § 404.1527(c)(2)(i) ("Length of the treatment relationship and the frequency of examination"); 20 C.F.R. § 404.1527(c)(2)(ii) ("Nature and extent of the treatment relationship"). Regarding the third and fourth deference factors, the ALJ gave Dr. Wynne's opinion "partial weight" because "[w]hile the record supports that [Plaintiff] is limited to unskilled work, the evidence does not support that [his] ability to perform simple work is significantly impaired." AR at 24. The ALJ then detailed why he made this finding: "treatment records typically reflected that [Plaintiff] was focused during his appointments[,]" and that his "condition improved." AR at 24 (citing AR at 393-506). The ALJ noted that Plaintiff "[w]ent to school and obtained his associate's degree, necessarily requiring concentration." AR at 24. ALJ Weiss disagreed with the GAF score Dr. Wynne gave Plaintiff, noting that "[t]he record does not support that [Plaintiff] was seriously impaired as throughout this time, he took care of his son, got his associate's degree, and worked for a period of time." AR at 24.

The ALJ's treatment of Dr. Wynne's opinion is minimal, but for the most part, it is sufficient. The Court finds reversible error, however, with the ALJ's decision to ignore Dr. Wynne's opinion that Plaintiff "might also have difficulty adapting to changes in the workplace." AR at 271. The Court's finding hinges on the fact that ALJ Weiss gave "great weight" to the opinions of Scott Walker, M.D. and Paul Cherry, Ph.D., the state psychological and medical consultants who reviewed the record in August and October 2013 respectively. *See* AR at 23. Confusingly, both Dr. Walker and Dr. Cherry gave Dr. Wynne's opinion "great weight." AR at 23, 81, 94-95. The ALJ did not address this

discrepancy in his treatment of the agency consultants' opinions. AR at 23. Regardless, the ALJ's opinion largely tracks the Mental RFC Assessment findings of Drs. Walker and Cherry. AR at 23.

First, both Dr. Walker and Dr. Cherry found some moderate limitations in Plaintiff's "understanding and memory" and "sustained concentration and persistence,"[4] which are reflected in the ALJ's finding that Plaintiff "is limited to performing simple, routine tasks. . . ."[5] AR at 19, 82-83, 95-96. Second, both found some moderate social interaction limitations, which are reflected in the ALJ's finding that Plaintiff may only "have occasional interaction with coworkers, supervisors, and the public."[6] AR at 19, 83, 96. Third, both found Plaintiff had a moderate limitation in his "ability to respond appropriately to changes in the work setting" due to his "[a]nger issues." AR at 83, 96. As Plaintiff points out, ALJ Weiss failed to explain why he did not incorporate this last

---

[4] Specifically, Drs. Walker and Cherry found moderate limitations in Plaintiff's ability to "understand and remember detailed instructions[,]" "carry out detailed instructions[,]" "maintain attention and concentration for extended periods[,]" "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances[,]" "work in coordination with or in proximity to others without being distracted by them[,]" and "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR at 82-83, 95-96.

[5] Plaintiff argues the ALJ erred in failing to incorporate Dr. Wynne's opinion that Plaintiff's "concentration and ability to persist at simple work tasks are at least moderately impaired." AR at 271. The Court finds, however, there is substantial evidence in the record to support Drs. Walker's and Cherry's findings – and the ALJ's determination – that Plaintiff's ability to carry out short and simple instructions is not significantly limited. *See* AR at 82, 95. Moreover, the ALJ adequately explained his decision on this point. *See* AR at 19-25.

[6] Specifically, they found limits in his ability to "interact appropriately with the general public[,]" "accept instructions and respond appropriately to criticism from supervisors[,]" "get along with coworkers or peers without distracting them or exhibiting behavioral extremes[,]" and "maintain socially appropriate behavior and . . . adhere to basic standards of neatness and cleanliness." AR at 83, 96.

moderate limitation into Plaintiff's RFC. *Doc. 22* at 15; AR at 23. The Commissioner fails to rebut this argument.

Plaintiff's position has merit. In a case with a fact pattern analogous to this one, the Tenth Circuit held that where an "ALJ's RFC determination reflect[ed] restrictions consistent with" some of the consulting mental health professional's restrictions, "but inexplicably reject[ed]" other restrictions – including the ability to "respond appropriately to workplace pressures and changes[,]" the ALJ committed reversible error. *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). Moreover, the fact that the professional's restrictions were "moderate" had no bearing, as "the ALJ also appeared to accept that a moderate impairment was not the same as no impairment at all[,]" because he included other of the moderate restrictions in the RFC determination. *Id.* at 1208. Similarly, the ALJ here incorporated Dr. Walker's and Dr. Cherry's moderate limitations on understanding, memory, sustained concentration, persistence, and social interactions into Plaintiff's RFC determination, but ignored without explanation their moderate limitations concerning Plaintiff's adaptation limitations. As the Tenth Circuit found, "the ALJ should have explained why he rejected" this moderate restriction on the doctors' "RFC assessment while appearing to adopt the others." *Id.*

Nor does the Court "read the ALJ's limiting [Plaintiff] to 'unskilled' work as an attempt to incorporate this limitation." *See Gonzales v. Colvin*, 213 F. Supp. 3d 1326, 1332 (D. Colo. 2016). The facts in *Gonzales* are also analogous: there, the ALJ "improperly ignored [a state agency psychological consultant's] finding that [the plaintiff had] a 'moderate' limitation in his 'ability to respond appropriately to changes in the work setting.'" *Id.* at 1331. The court noted that "[a]ny impairment-related limitations created

18

by an individual's response to demands of work . . . must be reflected in the RFC assessment." *Id.* (quoting Soc. Sec. Ruling, SSR 85-15, Titles II & XVI: Capability to do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 5857, at *6 (Jan. 1, 1985)). And because "a moderate impairment is not the same as no impairment at all[,]" *id.* (quoting *Haga*, 482 F.3d at 1208), "moderate limitations must be accounted for in an RFC finding[,]" *id.* (quoting *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) (internal citation omitted)). As in *Gonzales*, the Court finds the ALJ did not adequately explain how this mental impairment affects (or does not affect) Plaintiff's ability to do unskilled work. *See id.* (citing *Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015)). This is particularly true where the ALJ appeared to rely on the opinion of Dr. Roger T. Pray, who performed a psychological assessment on Plaintiff in October 2014. *See* AR at 22, 453-57. Dr. Pray "stressed that [Plaintiff] is a very dangerous person and his volatility and aggressiveness should not be underestimated." *See* AR at 22, 457. The Court finds this statement to be directly related – yet inexplicably ignored – to the moderate limitation Drs. Walker and Cherry noted on Plaintiff's ability to respond appropriately to changes in the work setting due to his anger issues. On remand, the ALJ should explain any rejection of this moderate limitation.

Plaintiff also complains in passing that Disability Determination Services did not provide Dr. Wynne with Plaintiff's relevant treatment records from Rio Grande Counseling. *Doc. 22* at 14. The Commissioner did not respond to this argument. *See Doc. 25.* It is true that DDS is required to give a consultative source "necessary background information about" a claimant's condition. 20 C.F.R. § 404.1517. There is

scant authority from this district or the Tenth Circuit regarding section 404.1517. In fact, the Court could find only one Tenth Circuit case that addresses this issue: *Jeffries v. S.S.A.*, 358 F. App'x 25 (10th Cir. 2009). In *Jeffries*, the plaintiff "complain[ed] that the non-treating consultative examiner did not have [pertinent records] to review at the time of his examination." *Id.* at 32 n.8. The Tenth Circuit found that those pertinent records "did not yet exist" at the time of the plaintiff's consultative exam. *Id.*

Here, at the time Dr. Wynne met with Plaintiff in August 2013, the record shows that Plaintiff had attended 33 sessions at Rio Grande Counseling, including 26 with Donna Hazlitt, LPCC, and 7 with Edward J. Neidhardt, M.D. AR at 406-50, 492, 497-506. The records from Dr. Neidhardt include information on Plaintiff's then-current diagnoses, medication management, symptoms, and patient history. *See* AR at 492, 497-506. While Dr. Wynne did not have the benefit of the official Rio Grande Counseling records, he did review an SSA Function Report and perform a "structured interview to collect a psychosocial history and to perform a mental status examination." AR at 269, 180-95. Through these resources, Dr. Wynne had access to Plaintiff's relevant diagnoses (major depression, anger, PTSD, mood disorder, unresolved grief, and obstructive sleep apnea), which largely reflect those found in Dr. Neidhardt's notes (PTSD, major depression, GERD, investigating obstructive sleep apnea). *See* AR at 272, 502. Dr. Wynne also noted that Plaintiff took two medications for depression and/or anxiety (Citalopram and Buproprin), which are confirmed by Dr. Neidhardt's records. *See* AR at 27, 495, 498. Finally, Dr. Wynne assessed Plaintiff's GAF score at 45, the same score Dr. Neidhardt gave him a few months earlier. *See* AR at 272, 505. Thus, it

appears to the Court that Dr. Wynne had sufficient "necessary background information," and Plaintiff fails to show how the records would have benefited Dr. Wynne otherwise.

### 4. The ALJ's findings regarding Plaintiff's exertional limitations are supported by substantial evidence.

Plaintiff next argues that "the ALJ improperly rejected medical evidence that supports [his] claim of an inability to walk or stand for prolonged periods, and his inability to grip or grasp objects." *Doc. 22* at 17-18.

### a. The ALJ's finding regarding Plaintiff's ability to walk and stand is supported by substantial evidence.

Plaintiff contends that the ALJ failed to include limitations on his ability to walk and stand in the RFC finding. *Id.* at 20. Plaintiff points out that the Agency's reviewing medical consultant, Dr. Mary Lanette Rees, M.D., who reviewed Plaintiff's claim in October 2013, noted that Plaintiff's "[p]lantar spurs found to cause some limitation. However, this . . . impairment is expected to be non-severe at 1 year after AOD." *See Doc. 2* at 4; AR at 91-92. Plaintiff notes that there is evidence of a diagnosis in March 2014 of "longstanding" heel pain, and in September 2014 of bilateral leg pain and swelling. *Doc. 26* at 4-5.

The ALJ adequately discussed the record evidence regarding Plaintiff's plantar fasciitis and vascular disease. AR at 15-16. He noted that while there is evidence of pain and treatment, Plaintiff's allegations of severe limitations are not supported where he did not receive treatment for his plantar fasciitis after January 2014, there was no evidence of abnormalities of gait at an October 2014 consultative examination, he did not mention plantar fasciitis in his June 2013 function report, his activities of daily living do not reflect such limitations, he provided no explanation for his assertion that he can

only walk one block, and "his girlfriend's third party report does not mention feet problems." AR at 15 (citing AR at 180-95, 289, 455). The ALJ also noted that while Plaintiff "complained of leg swelling[,]" he "denied significant leg weakness causing falls or trips" and there are no exam notes regarding swelling or varicose veins. AR at 16 (citing AR at 344-57). The Court notes that in Plaintiff's June 2013 function report, Plaintiff did not check the boxes to indicate his conditions affect his ability to walk or stand.[7] AR at 185. Further, even though Plaintiff said he could only walk one block before needing to stop and rest, he also said that he can resume walking "right away" after a rest. AR at 185. Finally, in the Disability Report Plaintiff completed, he reported that in his most recent job, which ended in November 2012, he walked and/or stood for 6 hours per day, and while he listed several other physical medical conditions (sleep apnea, GERD, etc.), he did not mention foot or leg problems. AR at 174-78.

The ALJ limited Plaintiff to "medium work" with the limitation that "he may stand or walk for six hours in an eight hour day and sit for two hours, with normal breaks." AR at 19. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c). Light work jobs "require[] a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). The Court finds that the ALJ's limitation on standing and

---

[7] In Section C, "Information About Abilities," the instructions direct the claimant to "[c]heck any of the following items your illnesses, injuries, or conditions affect." AR at 185. Plaintiff checked memory, completing tasks, concentration, following instructions, and getting along with others; he did not check any of the other available boxes, including: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair climbing, seeing, understanding, or using hands. AR at 185.

walking is supported by substantial evidence. The Court may "not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (quotations omitted). Plaintiff's motion is denied on this issue.

> **b.** **The ALJ's finding regarding Plaintiff's ability to grip and grasp is supported by substantial evidence.**

Plaintiff also contends that the evidence supports his "claim that he cannot frequently or constantly reach, handle, and finger, contrary to the ALJ's RFC finding." *Doc. 22* at 21 (citing AR at 19). Again, the Court finds the ALJ adequately discussed the record evidence. He noted that during a January 7, 2014 examination, Plaintiff's grip was weak but he had normal muscle tone and coordination. AR at 16 (citing AR at 335). Plaintiff complained again of weak grip strength but had normal reflexes on January 15, 2014 (AR at 16 (citing AR at 305-20)), and on September 13, 2014, when he complained of hand weakness but had symmetric grip strength with only mild weakness and was able to pick up items from the table (AR at 16 (citing AR at 344-57)). The Court notes that in the Function Report he completed in June 2013, Plaintiff reported that he cooks and handles of all of his personal care, he does laundry, other household tasks, and yard work, and he did not check any boxes in Section C, which allowed him to report whether his illnesses, injuries, or conditions affected tasks such as lifting, reaching, or "using hands." AR at 180-87. Ultimately, the ALJ found there was no formal diagnosis regarding muscle weakness, and "the clinical findings were relatively minimal." AR at 16.

The ALJ did not include a limitation in Plaintiff's RFC based on grip or grasp strength. *See* AR at 19. The Court does not find, however, that there was any error.

Substantial record evidence supports the ALJ's RFC determination, and the Court denies Plaintiff's Motion on this issue.

### B. The ALJ should obtain appropriate evaluations on remand.

Plaintiff contends the ALJ erred by failing to order a neuropsychological assessment. *Doc. 22* at 21. Dr. Pray, a psychologist who performed a one-time evaluation of Plaintiff, recommended a neuropsychological assessment to examine whether Plaintiff had suffered a traumatic brain injury during his military service. AR at 457. Dr. O'Brien also opined that Plaintiff "should seek a neurology and/or a neuropsychology evaluation to confirm a possible diagnosis of Traumatic Brain Injury." AR at 508. She further explained that such a head injury "could contribute to his inability to control his anger, and may have resulted in some of his multiple incarcerations." AR at 508. The ALJ noted that Plaintiff "may have had a traumatic brain injury in his past[,]" and that he "was referred to a neurologist [but] the record does not reflect that he has sought treatment with a neurologist." AR at 22. It is true that Plaintiff's physician, Dr. Kathryn Jones, referred Plaintiff to neurology for an MRI of the brain due to Plaintiff's complaints of chronic headaches, forgetfulness, and hand weakness. AR at 56 ("He is referred to neurology for cluster of symptoms including headache, weakness and memory loss[;] May need to consider neuropsych evaluation[;] Will obtain MRI"). There is no evidence that Plaintiff obtained an MRI.

The Court acknowledges that Plaintiff was represented at the disability hearing, and his attorney failed to request a consultative evaluation at the administrative level. *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008)). In *Maes*, the Tenth Circuit noted that it does "not ordinarily reverse or remand for failure to develop the record

when a claimant is represented by counsel who affirmatively submits to the ALJ that the record is complete[,]" particularly where "the missing medical records are not obvious from the administrative record or otherwise brought to the attention of the ALJ." *Id.* The Court finds that such was not the case here: the record reveals that multiple providers recommended Plaintiff obtain a neurological and/or neuropsychological evaluation and opined that Plaintiff's limitations might be partially due to a traumatic brain injury. The ALJ commented on this but provided no explanation for why he did not order such an evaluation.

Because there is evidence in the record that Plaintiff's limitations, including his anger issues, which are relevant to the issue of adapting to change in the workplace, may be related to a traumatic brain injury, the Court finds it would be prudent for the ALJ to order appropriate evaluations on remand or to explain why such evaluations are not necessary. *See*, *e.g.*, *Lang v. Berryhill*, No. 16cv565 BMJ, 2017 WL 3174949, at *3-4 (W.D. Okla. July 26, 2017).

Plaintiff next argues that ALJ Weiss also "erred by failing to order a consultative evaluation of" his ability to stand and walk, as well as his neck arthritis. *Doc. 22* at 22. "An ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997).

Plaintiff argues that because there is additional record evidence to support physical limitations that occurred after the reconsideration decision in October 2013, it was error for the ALJ to adopt the agency finding that the physical impairments were

non-severe, and "he was required to consider the findings in light of later-developed evidence." *Doc. 22* at 22 (citing Soc. Sec. Ruling, SSR 96-6p, Policy Interpretation Ruling Titles II & XVI: Consideration of Administrative Findings of Fact by State Agency Medical & Psychological Consultants & Other Program Physicians & Psychologists at the [ALJ] and Appeals Council Levels of Administrative Review; Medical Equivalence, 1996 WL 374180 (July 2, 1996)). There is evidence that the ALJ considered medical records from 2014, both for Plaintiff's foot and leg pain as well as his neck pain. *See* AR at 15-16.

And as Plaintiff acknowledges, because he "did not request a consultative evaluation at the administrative level, his burden is increased." *Doc. 22* at 23 (citing *Maes*, 522 F.3d at 1096). The Tenth Circuit has held that where a "claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Hawkins*, 113 F.3d at 1167. Thus, because Plaintiff's counsel failed to ask the ALJ to order a consultative examination, and because the Court does not see such a need for an examination "clearly established in the record[,]" the Court will deny Plaintiff's motion on this issue. *See id.* at 1168.

### C. Where there was a conflict between the VE's testimony and the DOT, the ALJ should have obtained an explanation.

Plaintiff argues that the ALJ erred by including an ability to sit and stand for six hours, and no limitation on Plaintiff's ability to reach, handle, finger, and feel. *Doc. 22* at

24. Because the Court found that the ALJ's findings on these issues are supported by substantial evidence, it will deny Plaintiff's Motion on this issue.

Finally, Plaintiff contends that the VE's testimony was inconsistent with the DOT, in that the reasoning levels of each job are not consistent with the ALJ's finding that Plaintiff is limited to simple work. *See id.* at 24-26. The Tenth Circuit has held "that the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); *see also* Soc. Sec. Ruling, SSR 00-4p, Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704, at *2 (Dec. 4, 2000). This is an "affirmative responsibility" in which the adjudicator must both "[a]sk the VE or VS if the evidence he or she has provided conflicts with the information provided in the DOT; and [i]f the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." SSR 00-4p, 2000 WL 1898704, at *4.

The Tenth Circuit extended these principles to General Educational Development (GED) reasoning levels in *Hackett*, 395 F.3d at 1176. GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Appx. C, Components of the Definition Trailer, 1991 WL 688702 (Jan. 1, 2016). "The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." *Id.* At issue

here is the Reasoning Development division, which has six defined levels, with one representing the lowest level and six representing the highest. *Id.*

Plaintiff argues that the mail clerk job, with a reasoning level of three, is inconsistent with Plaintiff's RFC limitation to simple and routine work. *Doc. 22* at 24-25. A reasoning level of three requires a worker to: "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." 1991 WL 688702. As the Tenth Circuit has held, a limitation to simple and routine work tasks "seems inconsistent with the demands of level-three reasoning." *Hackett*, 395 F.3d at 1176 (citing *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997)). Because there is a conflict between the VE's testimony and the DOT with respect to this issue, "there is no indication in the record that the VE expressly acknowledged a conflict with the DOT or that [s]he offered any explanation for the conflict[,]" *see Hackett*, 395 F.3d at 1175, and the ALJ did not "obtain a reasonable explanation for the apparent conflict[,]" *see* SSR 00-4p, 2000 WL 1898704, at *4, the Court will remand for an explanation.

Plaintiff argues that the photocopy machine operator job, with a reasoning level of two, is also inconsistent with Plaintiff's RFC limitation to simple and routine work. A reasoning level of two requires a worker to: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." 1991 WL 688702. The Tenth Circuit in *Hackett* found, however, that "level-two reasoning appears more consistent with" an RFC limitation to simple and routine work tasks. 395 F.3d at 1176.

Plaintiff argues further that "the ALJ specifically told the VE that Mr. Garcia could perform work that involves detailed instructions and **several** concrete variables," *see Doc. 22* at 25 (emphasis added), which is different from both the moderate limitation Drs. Walker and Cherry found as well as the limitation in level-two reasoning to "detailed but uninvolved . . . instructions . . . [and] problems involving **a few** concrete variables." *See* 1991 WL 688702 (emphasis added). While the difference here is very slight ("a few" versus "several"), the Court finds it is worthy of an explanation, as the case is already being remanded for further proceedings.

Finally, Plaintiff argues that it was error to include the hand cleaner/polisher job, which requires constant reaching and handling. *Doc. 22* at 26. The Court has already found that the ALJ's determination regarding Plaintiff's ability to reach and handle is supported by substantial evidence in the record, and it will deny Plaintiff's motion on this issue.

## V.    Conclusion

The Court finds that the ALJ failed to explain his rejection of the moderate limitation Drs. Walker and Cherry noted on Plaintiff's ability to respond appropriately to changes in the work setting. On remand, the ALJ should explain any rejection of this moderate limitation. Additionally, the ALJ should order appropriate evaluations regarding Plaintiff's possible traumatic brain injury or explain why such evaluations are not necessary. Because there is a conflict between the VE's testimony and the DOT with respect to the mail clerk job's reasoning level of three, the Court will remand for an explanation. Finally, because there is conflict between the ALJ's instructions to the VE that Plaintiff could perform work that involves detailed instructions and **several** concrete

variables, and the photocopy machine operator's reasoning level of two, which involves dealing with problems involving a **few** concrete variables, the Court will remand for the ALJ to obtain an explanation for the conflict.

Wherefore**,**

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum (*Doc. 22*) is **granted** as described herein. The Court will enter concurrently herewith a final order of remand pursuant to Rule 58 of the Federal Rules of Civil Procedure.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent